UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LAFVORNE BARNETT,<br>Plaintiff,<br>-against-<br>C.O. A. THOMAS, et al.,<br>Defendants. | **OPINION & ORDER**<br>24-CV-01174 (PMH) |

Philip M. Halpern, United States District Judge:

Lafvorne Barnett ("Plaintiff"), proceeding *pro se* and *in forma pauperis*, brings this action under 42 U.S.C. § 1983 against C.O. A. Thomas, C.O. K. Edwards, and C.O. M. Banks ("Defendants") alleging Defendants violated his constitutional rights on December 19, 2023 while he was incarcerated at Sing Sing Correctional Facility. (Doc. 23, "Am. Compl."). The Amended Complaint, construed liberally, presses claims for: (1) unlawful search in violation of the Fourth Amendment; (2) sexual abuse in violation of the Eighth Amendment; and (3) excessive force in violation of the Eighth Amendment. (*See id.*). Pending before the Court is Defendants' motion for summary judgment. (Doc. 97; Doc. 98, "Defs. Br."; Doc. 99, "56.1 Stmt."; Doc. 100, "Cahn Decl."; Doc. 101). Plaintiff did not file opposition to Defendants' motion; the Court therefore

deems the motion unopposed.[1] Defendants, despite Plaintiff's failure to file opposition, filed reply. (Doc. 102, "Reply").

For the reasons set forth below, Defendants' unopposed motion for summary judgment is granted in part and denied in part.

**BACKGROUND**

The Court recites the facts only to the extent necessary to adjudicate the extant motion for summary judgment and draws them from the pleadings, Defendants' Rule 56.1 Statement, and the Cahn Declaration along with the exhibits annexed thereto, which include, *inter alia*: (1) Plaintiff's deposition transcript (Cahn Decl., Ex. A, "Pl. Dep. Tr."); (2) Plaintiff's ambulatory health record progress notes (*id.*, Ex. B); (3) the Unusual Incident and Use of Force Report packet stemming from the December 19, 2023 incident (*id.*, Ex. C); (4) records of Plaintiff's grievances (*id.*, Exs. D-G); and (5) disciplinary disposition records from the December 19, 2023 incident (*id.*, Ex. H).

I. December 19, 2023 Incident

Plaintiff alleges that, on December 19, 2023, Defendants unlawfully searched him, sexually assaulted him during the search, and used excessive force against him both during and following

[1] Defendants, in accordance with the Court's Individual Practices, filed a pre-motion letter seeking leave to file a motion for summary judgment and a 56.1 Statement on October 23, 2025. (Doc. 95). Defendants attached to their letter-motion an affidavit of service which indicates that their letter-motion and 56.1 Statement were served on Plaintiff. (Doc. 95-2). The Court granted Defendants leave to move for summary judgment and set a briefing schedule for Defendants' motion on November 5, 2025. (Doc. 96). A copy of the Court's order was mailed to Plaintiff. (*See* November 6, 2025 Docket Entry). Defendants filed their motion on December 8, 2025, in accordance with the briefing schedule set by the Court. (Doc. 97). Defendants attached to their Notice of Motion an affidavit of service, indicating that Defendants' motion and supporting documents were served on Plaintiff at his address listed on the docket and, "because Plaintiff appears to longer be in DOCCS custody," at Plaintiff's address currently on file with his parole officer. (Doc. 97-1). Defendants also provided to Plaintiff the requisite Notice to Pro Se Litigants Pursuant to Local Civil Rule 56.2 which included, *inter alia*, the text of Federal Rule of Civil Procedure 56 and a forewarning that failure to respond may result in the dismissal of the case. (Doc. 101). Plaintiff was plainly on notice of Defendants' motion for summary judgment and the deadline to file his opposition, as he had been served with the moving papers as well as several other documents notifying him of Defendants' motion. Accordingly, the Court finds that Plaintiff received adequate notice that his claims might be dismissed for failure to file an opposition to Defendants' motion for summary judgment.

the search. (*See* Am. Compl.). Plaintiff, at the time of the incident, was incarcerated at Sing Sing Correctional Facility. (56.1 Stmt. ¶ 4). Defendants were all employed as correctional officers at Sing Sing Correctional Facility during the relevant period. (*Id.* ¶¶ 11-13).

On December 19, 2023, Defendants Thomas and Banks escorted Plaintiff on a "medication run." (*Id.* ¶ 27). According to Plaintiff's deposition testimony, Defendant Edwards conducted an initial pat frisk of Plaintiff when he left his cell[2] and Plaintiff also passed through a metal detector on his way to the facility's medical center. (Pl. Dep. Tr. at 49:11-13, 71:11-19). Plaintiff, during the medication run, "made verbal threats towards Defendants and other DOCCS staff." (56.1 Stmt. ¶ 28). Plaintiff, for his part, testified at his deposition that he was "being harassed," "threatened," and "picked on" by Defendants Thomas and Edwards. (Pl. Dep. Tr. at 56:4-9). Defendant Edwards, according to Plaintiff, left and went "back to the block," but Defendant Thomas continued making "threats towards [Plaintiff]" on their way to the medical center, including telling Plaintiff to "swing, just swing"; only then did Plaintiff "start[] talking back to" Defendants. (Pl. Dep. Tr. at 56:10-16, 56:24-57:3). For instance, Plaintiff testified that he told Defendant Banks that "Attica is way worse than you guys. You guys are weak." (*Id.* at 52:12-13).

It is undisputed that, on the way back to Plaintiff's cell from the medication run, Plaintiff reached into the crotch area of his pants. (*See* 56.1 Stmt. ¶ 29; Pl. Dep. Tr. at 58:10-13). Defendant Banks claims that he saw Plaintiff, after reaching into his pants, make a motion with his hand. (56.1 Stmt. ¶ 29). Plaintiff testified that he was "fixing [his] pants" because his "boxers was down in [his] pants," and that he did not "think they thought it was a weapon, because [Plaintiff] never played with weapons." (Pl. Dep. Tr. at 58:10-13, 73:22-23). Defendants Thomas and Banks stated

---

[2] Plaintiff does not allege that Defendant Edwards violated his constitutional rights during this initial pat frisk. (*See* Am. Compl.).

that they believed Plaintiff was reaching for a weapon and, accordingly, asked Plaintiff if he had a weapon in his hand. (56.1 Stmt. ¶¶ 31-32).

Defendant Thomas ordered Plaintiff to submit to a pat frisk in a stairwell. (56.1 Stmt. ¶ 33). According to Plaintiff, this occurred roughly "five or six minutes" after he had reached into his pants because Defendants Thomas and Banks were "wait[ing] till there was no one around." (Pl. Dep. Tr. at 85:18-19, 86:11-14). Defendants contend that, although Plaintiff initially complied and placed his hands on the wall, once Defendant Thomas began the pat frisk, Plaintiff attempted to punch Defendant Thomas. (*Id.* ¶¶ 33-36). Plaintiff testified that Defendant Thomas "choked [him] up [his] sweatshirt" and then "grabbed inside of [his] pants in [his] private" and only then did he swing at Defendant Thomas. (Pl. Dep. Tr. at 49:16-22, 59:3-9). Defendant Banks was present for but did not participate in the pat frisk; Defendant Edwards was not present for the pat frisk. (*See* 56.1 Stmt. ¶¶ 37-38). Plaintiff stated at his deposition that no weapon was found as a result of the search. (Pl. Dep. Tr. at 49:23-25).

Plaintiff also stated that, after he "swung on" Defendant Thomas for grabbing his crotch, "Officer Edwards and everybody start[ed] intervening." (Pl. Dep. Tr. at 48:10-16, 49:18-20). Defendant Banks allegedly "knocked out [Plaintiff's] teeth and bust [his] head open with the stick" and told Plaintiff "we're worse than Attica." (*Id.* at 51:6-9, 52:14). Plaintiff testified that Defendant Banks hit him "[a]t least three or four times in [his] mouth, and three or four times in [his] head" with a baton (*id.* at 93:14-19), and Defendant Thomas "started putting hands on" him (*id.* at 59:15-20). According to Plaintiff, Defendant Thomas struck him "three or four times" in his stomach, ribs, side, and legs. (*Id.* at 94:4-10). Defendant Edwards also "came down to help them" and Plaintiff "was getting beaten up by three guys at first." (*Id.* at 59:21-22). Plaintiff further testified

that he "was getting beat a lot, to the point where it was a lot [of] blood on the floor." (*Id.* at 92:19-21).

Plaintiff stated that, following this incident, he was in the hospital until December 28, 2023. (Pl. Dep. Tr. at 37:13-17).

II. <u>Plaintiff's Grievance of December 19, 2023 Incident</u>

Plaintiff filed a grievance regarding the December 19, 2023 incident on January 5, 2024. (56.1 Stmt. ¶ 17). Plaintiff stated in this grievance that, on his way back from a medical run, Defendant Thomas choked him with his shirt, threw him against the wall to search him, and grabbed his genitals. (*See* Cahn Decl., Ex. D at 2).[3] Plaintiff states that he then "swang on" Defendant Thomas, Defendant Edwards punched him, and Defendant Banks "pulled out his stick and struck [him] in [his] teeth and in [his] head 3 times each." (*Id.*).

Plaintiff's grievance was divided into two separate grievances, one regarding his allegations of sexual abuse, and another regarding his allegations of excessive force. (56.1 Stmt. ¶¶ 18-20). The grievance concerning Plaintiff's allegations of excessive force was referred to the superintendent of the prison pursuant to N.Y. Comp. Codes R. & Regs. Tit. 7 § 701.8(b); this grievance "was found to be unsubstantiated" on February 20, 2024. (*Id.* ¶ 24). Plaintiff appealed the denial of the excessive force grievance to the Central Office Review Committee on February 22, 2024, 13 days after he filed this lawsuit. (*Id.* ¶ 25).

## <u>STANDARD OF REVIEW</u>

Pursuant to Federal Rule of Civil Procedure 56, a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' if it 'might affect the

[3] Citations to specific pages of filings on the docket correspond to the pagination generated by ECF.

outcome of the suit under the governing law,' and is genuinely in dispute 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Liverpool v. Davis*, 442 F. Supp. 3d 714, 722 (S.D.N.Y. Feb. 26, 2020) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "'Factual disputes that are irrelevant or unnecessary' are not material and thus cannot preclude summary judgment." *Sood v. Rampersaud*, No. 12-CV-05486, 2013 WL 1681261, at *1 (S.D.N.Y. Apr. 17, 2013) (quoting *Anderson*, 477 U.S. at 248). "The question at summary judgment is whether a genuine dispute as to a *material* fact exists—not whether the parties have a dispute as to any fact." *Hernandez v. Comm'r of Baseball*, No. 22-343, 2023 WL 5217876, at *5 (2d Cir. Aug. 15, 2023) (citing *McKinney v. City of Middletown*, 49 F.4th 730, 737 (2d Cir. 2022)).

The Court's duty, when determining whether summary judgment is appropriate, is "not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *McKinney*, 49 F.4th at 738 (quoting *Wilson v. Nw. Mut. Ins. Co.*, 625 F.3d 54, 60 (2d Cir. 2010)). Indeed, the Court's function is not to determine the truth or weigh the evidence. The task is material issue spotting, not material issue determining. Therefore, "where there is an absence of sufficient proof as to one essential element of a claim, any factual disputes with respect to other elements of the claim are immaterial." *Bellotto v. Cnty. of Orange*, 248 F. App'x 232, 234 (2d Cir. 2007) (quoting *Salahuddin v. Goord*, 467 F.3d 263, 281 (2d Cir. 2006)).

"It is the movant's burden to show that no genuine factual dispute exists." *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). The Court must "resolve all ambiguities and draw all reasonable inferences in the non-movant's favor." *Id.* (citing *Giannullo v. City of N.Y.*, 322 F.3d 139, 140 (2d Cir. 2003)). Once the movant has met its burden, the non-movant "must come forward with specific facts showing that there is a genuine issue for trial." *Liverpool*, 442 F. Supp. 3d at 722 (quoting

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 , 586-87 (1986)). The non-movant cannot defeat a summary judgment motion by relying on "mere speculation or conjecture as to the true nature of the facts." *Id.* (quoting *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986)). However, if "there is any evidence from which a reasonable inference could be drawn in favor of the opposing party on the issue on which summary judgment is sought, summary judgment is improper." *Sood*, 2013 WL 1681261, at *2 (citing *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 83 (2d Cir. 2004)).

Should there be no genuine issue of material fact, the movant must also establish its entitlement to judgment as a matter of law. *See Glover v. Austin*, 289 F. App'x 430, 431 (2d Cir. 2008) ("Summary judgment is appropriate if, but only if, there are no genuine issues of material fact supporting an essential element of the plaintiff's claim for relief."); *Pimentel v. City of New York*, 74 F. App'x 146, 148 (2d Cir. 2003) (holding that because plaintiff "failed to raise any issue of material fact with respect to an essential element of her[] claim, the District Court properly granted summary judgment dismissing that claim"). Simply put, the movant must separately establish that the law favors the judgment sought.

The Court is, of course, mindful that "[*p*]*ro se* litigants are afforded a special solicitude," which includes reading their filings "to raise the strongest arguments they suggest." *Mortimer v. City of New York*, No. 15-CV-07186, 2018 WL 1605982, at *9 (S.D.N.Y. Mar. 29, 2018). "It is through this lens of leniency towards *pro se* litigants that this Court must consider a defendant's motion for summary judgment against a *pro se* plaintiff." *Adams v. George*, No. 18-CV-02630, 2020 WL 5504472, at *5 (S.D.N.Y. Sept. 8, 2020). This status does not, however, excuse a *pro se* litigant from making the showing required to defeat summary judgment; he or she must offer more than "bald assertions, completely unsupported by evidence" to overcome the motion. *Wisdom v.*

*Loiodice*, No. 17-CV-04837, 2020 WL 4431590, at *4 (S.D.N.Y. July 31, 2020); *see also Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003) (explaining that the mere fact that a litigant is *pro se* "does not relieve plaintiff of his duty to meet the requirements necessary to defeat a motion for summary judgment"); *Ross v. Koenigsmann*, No. 14-CV-01321, 2017 WL 9511096, at *1 (N.D.N.Y. Aug. 16, 2017), *adopted sub nom. Ross v. Mannava*, 2017 WL 4338883 (N.D.N.Y. Sept. 29, 2017).

Where, as here, a summary judgment motion is unopposed, "uncontroverted facts in the moving party's statement pursuant to Local Rule 56.1 are deemed admitted." *Johnson v. City of New York*, No. 15-CV-00403, 2016 WL 7335663, at *2 (S.D.N.Y. Dec. 16, 2016) (citing *Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003)); *see also Fate v. Petranker*, No. 19-CV-05519, 2022 WL 2672317, at *1 (S.D.N.Y. July 8, 2022) ("Statements made by Defendant that are supported by admissible evidence and not refuted by Plaintiff are deemed admitted."). "Even when a motion for summary judgment is unopposed, the district court is not relieved of its duty to decide whether the movant is entitled to judgment as a matter of law." *Vermont Teddy Bear*, 373 F.3d at 242. "Before summary judgment may be entered, the district court must ensure that each statement of material fact is supported by record evidence sufficient to satisfy the movant's burden of production even if the statement is unopposed." *Jackson v. Fed. Express*, 766 F.3d 189, 195 (2d Cir. 2014). "And, of course, the court must determine whether the legal theory of the motion is sound." *Id.* A summary judgment motion in a *pro se* case "may be granted unopposed only if (1) the plaintiff has received adequate notice that failure to file any opposition may result in dismissal of the case; and (2) the Court is satisfied that the facts as to which there is no genuine dispute show that the moving party is entitled to judgment as a matter of law." *Lurch v. Berry*, No. 20-CV-02312, 2021 WL 3668113, at *3 (S.D.N.Y. Aug. 17, 2021).

## ANALYSIS

Plaintiff asserts three claims for relief: (1) unlawful search in violation of the Fourth Amendment; (2) sexual abuse in violation of the Eighth Amendment; and (3) excessive force in violation of the Eighth Amendment. (*See* Am. Compl.).[4]

Plaintiff's claims are brought pursuant to 42 U.S.C. § 1983. Section 1983 provides in pertinent part that "[e]very person who, under color of any statute . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." 42 U.S.C. § 1983. "[T]his language does not create substantive rights; rather, it creates a mechanism by which individuals can vindicate the violation of rights secured elsewhere." *Santucci v. Levine*, No. 17-CV-10204, 2021 WL 76337, at *3 (S.D.N.Y. Jan. 8, 2021). Thus, to state a claim under § 1983, Plaintiff must demonstrate "(1) a right secured by the Constitution or laws of the United States was violated, and (2) the right was violated by a person acting under color of state law, or a state actor." *Id.* "The first step in any [§ 1983] claim is to identify the constitutional right allegedly infringed." *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

I. Administrative Exhaustion of Excessive Force Claim

Defendants argue that Plaintiff failed to administratively exhaust his excessive force claim as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a) ("PLRA"). (Defs. Br. at 12-

[4] Plaintiff also purports to assert a Fourteenth Amendment claim. (*See id.* at 2 ("[A]s for the three C.O.'s . . . I am s[uing] them . . . for vi[o]lating my 14th Amendment right . . . .")). However, the Amended Complaint supplies no allegations concerning that claim. (*See id.*). Accordingly, to the extent Plaintiff seeks to press a claim under the Fourteenth Amendment, that claim is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), which provides that the Court "shall dismiss the case at any time if the court determines that the action . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

21). For the reasons stated below, the Court finds that Plaintiff properly exhausted his excessive force claim.

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This provision "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes," *Hernandez v. Coffey*, 582 F.3d 303, 305 (2d Cir. 2009) (quoting *Porter v. Nussle*, 534 U.S. 516, 532 (2002); and it is "'mandatory': An inmate 'shall' bring 'no action' (or said more conversationally, may not bring any action) absent exhaustion of available administrative remedies," *Ross v. Blake*, 578 U.S. 632, 638 (2016). "Moreover, the PLRA 'requires proper exhaustion, which means using all steps that the prison grievance system holds out.'" *Ayala-Rosario v. Westchester Cnty.*, No. 19-CV-03052, 2020 WL 3618190, at *4 (S.D.N.Y. July 2, 2020) (quoting *Williams v. Priatno*, 829 F.3d 118, 122 (2d Cir. 2016)). This "means that 'prisoners must complete the administrative review process in accordance with the applicable procedural rules—rules that are defined not by the PLRA, but by the prison grievance process itself.'" *Gottesfeld v. Anderson*, No. 18-CV-10836, 2020 WL 108590, at *6 (S.D.N.Y. Mar. 6, 2020) (quoting *Johnson v. Killian*, 680 F.3d 234, 238 (2d Cir. 2012)).

The New York Compilation of Codes, Rules & Regulations has special procedures for grieving "alleged incident[s] of sexual abuse or sexual harassment." N.Y.C.R.R. tit. 7 § 701.3(i). Under this section, "an inmate is not required to file a grievance concerning an alleged incident of sexual abuse or sexual harassment to satisfy the Prison Litigation Reform Act (PLRA) exhaustion requirement (42 U.S.C. § 1997e(a)) before bringing a lawsuit regarding an allegation of sexual abuse" as long as certain procedures are followed. *Id.* Furthermore, if an inmate files a grievance

"regarding a complaint of sexual abuse or sexual harassment . . . [t]he complaint shall be deemed exhausted upon filing for PLRA purposes." *Id.* "If the grievance does not set forth any additional matters that require a response, the grievance shall be closed." *Id.*

While the Second Circuit has not addressed this issue, several courts have held that "any non-sexual act 'intertwined' with sexual abuse is subject to the relaxed grievance standards" of section 701.3(i). *Akinlawon v. Polonco*, No. 21-CV-02621, 2023 WL 6216724, at *14 (S.D.N.Y. Sept. 25, 2023). The reasoning for this is two-fold: (1) "the regulation provides that the relaxed standard governs 'any allegation *concerning* an incident of sexual abuse or sexual harassment'"; and (2) requiring inmates "to file separate grievances for actions that occurred simultaneously and in concert with one another would have the adverse effect of forcing an inmate to determine whether such related assaults were 'sufficient under [the Prison Rape Elimination Act] prior to relying upon the language in Directive 4040[,]' and such an implied requirement would be 'untenable.'" *Id.* (alteration in original) (first quoting N.Y.C.R.R. tit. 7 § 701.3(i); and then quoting *Henderson v. Annucci*, No. 14-CV-00445, 2016 WL 3039687, at *5 (W.D.N.Y. Mar. 14, 2016)); *see also Sheffer v. Fleury*, No. 18-CV-01180, 2019 WL 3891143, at *4 (N.D.N.Y. Aug. 19, 2019) (report and recommendation), *adopted by*, 2019 WL 4463672 (S.D.N.Y. Sept. 18, 2019) ("Directive 4040 specifically refers to an 'incident' of sexual abuse."). "Thus, all non-sexual misconduct 'intertwined' with any allegations of sexual assault should be considered as covered by the lenient exhaustion requirements." *Akinlawon*, 2023 WL 6216724, at *14. "That incident could include, not only the acts of sexual abuse by an inmate or corrections officer, but also other events which are necessarily intertwined with such a claim, such as a physical assault during the course of the abuse; the failure of correctional staff to intervene to stop the rape; or acts or failures to act making a jail official legally accountable for the sexual abuse." *Sheffer*, 2019 WL 3891143,

at *4 (citing *Abreu v. Miller*, No. 15-CV-01306, 2018 WL 4502007, at *2 (N.D.N.Y. Sept. 20, 2018)).

Here, Plaintiff's excessive force claim is sufficiently intertwined with his allegations of sexual misconduct such that it is subject to the relaxed grievance standard of section 701.3(i). Plaintiff's grievance alleges that Defendant Thomas choked him and threw him against the wall in order to search him, grabbed and squeezed his genitalia during the search, and, after Plaintiff swung at Defendant Thomas for grabbing his genitalia, the Defendants punched Plaintiff and beat him with a stick. (Cahn Decl., Ex. D at 2). Thus, Plaintiff's excessive force claim is "intertwined" with his sexual abuse claim. *Accord Haywood v. Annucci*, No. 18-CV-10913, 2022 WL 4357648, at *8 (S.D.N.Y. Sept. 20, 2022) (pushing of the plaintiff against a wall and punching his face which "occurred in concert with the sexual assault and within a matter of seconds in the same location" were intertwined with the sexual assault claim).

Defendants make a colorable argument that Plaintiff's excessive force claim is not intertwined with his sexual assault claim because the events can be broken up into "a discrete sequence of incidents." (Defs. Br. at 18). However, as described by Plaintiff, this "discrete sequence of incidents" occurred in quick succession (*see* Cahn Decl., Ex. D at 2), such that they are one "incident." *Accord Sheffer*, 2019 WL 3891143, at *4.

Defendants also argue that, because the prison facility split Plaintiff's excessive force grievance from his sexual assault grievance, "specifically advised" him that he needed to be interviewed for his excessive force grievance, and Plaintiff took steps towards exhausting his excessive force grievance, "Plaintiff was in no way required to guess whether his allegations of sexual assault permitted him to rely on Section 701.3(i)'s relaxed exhaustion standard for his entire grievance." (Defs. Br. at 19). Defendants are correct that this may obviate the concern that Plaintiff

was placed in an untenable position of determining whether he must file separate grievances, *see Akinlawon*, 2023 WL 6216724, at *14, but Defendants ignore the plain text of section 701.3(i), which states that "any allegation *concerning* an *incident* of sexual abuse or sexual harassment" is subject to the relaxed grievance procedure. N.Y.C.R.R. tit. 7 § 701.3(i) (emphasis added). Since Plaintiff's allegations concern a single incident, which includes sexual abuse, his excessive force claim is sufficiently intertwined with his sexual assault claim such that it is subject to the relaxed grievance standard.

Defendants make no argument regarding the merits of Plaintiff's excessive force claim. Accordingly, since the Court finds that Plaintiff's excessive force claim was properly grieved, Defendants' motion for summary judgment is denied as to Plaintiff's excessive force claim.

II. Fourth Amendment Claim Against Defendant Thomas

Defendants also move for summary judgment "[t]o the extent Plaintiff seeks to challenge the reasonableness of CO Thomas' pat frisk under the Fourth Amendment . . . ." (Defs. Br. at 25). Plaintiff writes in his Amended Complaint that he is suing Defendants "for violating [his] 4th Amendment right." (Am. Compl. at 2). Plaintiff also describes the alleged unlawful search. (*See id.* at 1-2). Accordingly, the Court finds that Plaintiff has pled a Fourth Amendment claim.

The Fourth Amendment prohibits only unreasonable searches. *Carroll v. United States*, 267 U.S. 132, 147 (1925). "[T]here is a 'long-established principle that the routine, random strip searches of inmates, including body cavity inspections, do not violate the Fourth Amendment.'" *Vaughn v. Strickland*, Nos. 12-CV-02696, 12-CV-03335, 12-CV-02995, 12-CV-03333, 2013 WL 3481413, at *4 (S.D.N.Y. July 11, 2013) (quoting *Castro-Sanchez v. N.Y.S. Dep't of Corr. Servs.*, No. 10-CV-08314, 2012 WL 4474154, at *3 (S.D.N.Y. Sept. 28, 2012)). "Nevertheless, 'the Fourth Amendment still requires all searches conducted within a prison, including strip searches, to be

reasonable.'" *Id.* (quoting *Jean-Laurent v. Wilkinson*, 438 F. Supp. 2d 318, 323 (S.D.N.Y. 2006), *aff'd sub nom. Jean-Laurent v. Wilkerson*, 461 F. App'x 18 (2d Cir. 2012)).

The test of reasonableness under the Fourth Amendment requires a balancing of the need for the search against the invasion of personal rights that it entails. *Bell v. Wolfish*, 441 U.S. 520, 559 (1979). In that regard, "[a] detention facility is a unique place fraught with serious security dangers. Smuggling of money, drugs, weapons, and other contraband is all too common an occurrence." *Torres v. City of New York*, No. 17-CV-06604, 2019 WL 4784756, at *5 (S.D.N.Y. Sept. 30, 2019). Notwithstanding, "inmates retain a limited right to bodily privacy under the Fourth Amendment." *Harris v. Miller*, 818 F.3d 49, 57 (2d Cir. 2016) (noting that "maintenance of prison security is not burdened unduly by the recognition that inmates do retain a limited right to bodily privacy").

"[I]f the inmate's Fourth Amendment claim challenges an isolated search, courts typically apply the standard set forth in *Bell v. Wolfish*." *Harris*, 818 F.3d at 58. The *Bell* four-factor test of reasonableness requires courts to consider: (1) the scope of the intrusion; (2) the manner in which the search was conducted; (3) the justification for commencing the search; and (4) the place in which the search was conducted. *Torres*, 2019 WL 4784756, at *5 (citing *Bell*, 441 U.S. at 559).

The Court agrees with Defendants that the first *Bell* factor weighs in favor of a finding of reasonableness. (*See* Defs. Br. at 25-26). Plaintiff was not even strip-searched, let alone subject to a visual or manual body cavity search. *See Harris*, 818 F.3d at 59 ("[T]he first *Bell* factor—the scope of the intrusion—varies with the type of search."). Moreover, that Plaintiff was searched by a man, and not a woman, weighs in Defendant Thomas' favor. *See id.* at 59 (finding cross-gender strip searches to aggravate the scope of the intrusion); *Sankara v. Plaskett*, No. 15-CV-08470, 2017

WL 4444250, at *3 (S.D.N.Y. Oct. 4, 2017) (finding a strip search performed by a member of the same sex reasonable).

Under the second *Bell* factor, a "search conducted in a professional manner is more reasonable than one that is not." *Harris*, 818 F.3d at 59-60 (citing *Grummett v. Rushen*, 779 F.2d 491, 496 (9th Cir. 1985)). Here, viewing the evidence in the light most favorable to Plaintiff, a reasonably jury could conclude that the search by Defendant Thomas was not conducted in a professional manner. Plaintiff testified at his deposition that Defendant Thomas choked him with his sweatshirt and grabbed and squeezed his private parts. (Pl. Dep. Tr. at 49:16-22, 59:3-9). The "violent and forceful manner" of the search, *Harris*, 818 F.3d at 60, if Plaintiff's testimony is to be credited, weighs against a finding of reasonableness. *Accord Layne v. Panzarella*, No. 19-CV-04531, 2022 WL 2343184, at *5 (S.D.N.Y. June 29, 2022) (finding that the second *Bell* factor weighed against reasonableness where the defendants "sprayed [the plaintiff] with mace, tackled him to the ground, and kicked him before . . . perform[ing] an anal cavity search.").

For the third factor, the justification for the search, Defendants argue that "CO Thomas" was "concerned Plaintiff was retrieving a weapon." (Defs. Br. at 26). However, "a factfinder could find [Defendants'] proffered justification unconvincing." *Harris*, 818 F.3d at 61. A jury could credit Plaintiff's testimony, and find that Defendants were not in fact concerned that Plaintiff had a weapon, but instead conducted the search to punish Plaintiff. (*See, e.g.*, Pl. Dep. Tr. at 75:2-10 ("He kept saying he was going to beat me up. And why it's going to be way worse . . . than other facilities.")). Moreover, if Plaintiff had already been pat frisked by Defendant Edwards and passed through a metal detector, as he testified (*see* Pl. Dep. Tr. at 49:11-13, 71:11-19), this calls into question whether Defendants truly believed Plaintiff had a weapon. Further, Plaintiff testified that Defendants waited several minutes after he reached into his crotch area before searching him. (Pl.

Dep. Tr. at 85:18-19, 86:11-14). If true, a jury could find that this cuts against the notion that Defendants believed Plaintiff had a weapon. Accordingly, viewing the evidence in the light most favorable to Plaintiff, the third *Bell* factor weighs against the reasonableness of the search.

Finally, for the fourth factor, the Court agrees with Defendants that the fact that the search was conducted in a stairwell outside the presence of anyone but Plaintiff, Defendant Thomas, and Defendant Banks, weighs in favor of a finding of reasonableness. *See Layne*, 2022 WL 2343184, at *6 (finding that the search was conducted in "a private area of the prison away from other inmates . . . weigh[ed] in favor of reasonableness under the fourth *Bell* factor.").

Accordingly, as there are material issues of fact regarding at least two of the *Bell* factors, Defendants' motion for summary judgment as to Plaintiff's Fourth Amendment claim against Defendant Thomas is denied. *Accord Johnson v. Naqvi*, No. 18-CV-00694, 2021 WL 1723773, at *14-16 (D. Conn. Apr. 29, 2021) (denying summary judgment on Fourth Amendment claim where there were material issues of fact regarding the third *Bell* factor).

III. Sexual Abuse Claim Against Defendant Thomas

Plaintiff's sexual abuse claim is assessed under the Eighth Amendment. Sexual abuse claims are a "species of excessive force." *Russell v. Scott*, 170 F.4th 83, 94 (2d Cir. 2026). "Under the Eighth Amendment, conditions of confinement 'must not involve the wanton and unnecessary infliction of pain.'" *Vann v. Griffin*, No. 16-CV-09903, 2018 WL 6199860, at *6 (S.D.N.Y. Nov. 28, 2018) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). "[S]exual abuse of a prisoner by a corrections officer may in some circumstances violate the prisoner's right to be free from cruel and unusual punishment." *Boddie v. Schnieder*, 105 F.3d 857, 860-61 (2d Cir. 1997). Moreover, the violation must be (i) objectively serious, and (ii) committed by a defendant with subjective culpability. *See Castro-Sanchez*, 2012 WL 4474154, at *2-3. Under this standard, "the

principal inquiry is whether the contact is incidental to legitimate official duties, such as a justifiable pat frisk or strip search, or by contrast whether it is undertaken to arouse or gratify the officer or humiliate the inmate." *Crawford v. Cuomo*, 796 F.3d 252, 257-58 (2d Cir. 2015). As the Second Circuit has explained, "even an officer who is meticulous in conducting a search does not violate an inmate's constitutional rights as long as the officer had no intention of humiliating the inmate or deriving sexual arousal or gratification from the contact." *Id.* at 258.

Defendants argue that "Plaintiff cannot adduce *any* admissible evidence showing that such touching was intended to humiliate Plaintiff or gratify CO Thomas." (Defs. Br. at 24). The Court disagrees. The Second Circuit recognized, in *Delee v. Hannigan*, 729 F. App'x 25, 30 (2d Cir. 2018), that "intent may be inferred from statements made by a corrections officer, from the use of demeaning sexualized remarks, from the timing of an assault, or from a lack of any legitimate law enforcement or penological purpose for the defendant's alleged conduct." (citation modified).

Here, a reasonable jury could infer Defendant Thomas's subjective intent to humiliate and harass Plaintiff given the "lack of any legitimate law enforcement or penological purpose for the defendant's alleged conduct." *Id.* at 30. As discussed *supra* regarding Plaintiff's Fourth Amendment claim, there are material issues of fact whether there was a legitimate, penological purpose for searching Plaintiff. *Cf. Russell*, 170 F.4th at 97 ("No search for contraband could require grabbing, squeezing, and twisting [the plaintiff's] penis."); *see also DeJesus v. Malloy*, 531 F. Supp. 3d 650, 664 (W.D.N.Y. 2021) ("[T]he evidence presented by Plaintiff supports the conclusion that Defendant engaged in this behavior to humiliate Plaintiff and cause him pain" where the defendant "reach[ed] inside Plaintiff's pants and painfully grabb[ed] his genitalia . . . .").

Accordingly, Defendants' motion for summary judgment is denied as to Plaintiff's sexual abuse claim against Defendant Thomas.

IV. Fourth Amendment and Sexual Abuse Claims Against Defendants Edwards and Banks

It is undisputed that Defendants Edwards and Banks did not directly participate in the challenged search of Plaintiff. (56.1 Stmt. ¶¶ 37-38). Thus, in the absence of their direct participation, the only possible theory of liability on Plaintiff's Fourth Amendment and sexual abuse claims against these Defendants is necessarily one for failure to intervene. The Court finds that this theory survives summary judgment only as to the Fourth Amendment claim against Defendant Banks.

"[A]ll law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994). "Prison officials can be held liable under § 1983 for failing to intervene in a situation where another official is violating an inmate's constitutional rights, including the use of excessive force, in their presence." *Casanova v. Maldonado*, No. 17-CV-01466, 2021 WL 3621686, at *6 (S.D.N.Y. Aug. 16, 2021) (citation modified) (quoting *Edwards v. Daniels*, No. 17-CV-05018, 2020 WL 0357412, at *2 (S.D.N.Y. June 9, 2020)).

"Failure to intercede results in liability where an officer observes excessive force is being used or has reason to know that it will be." *Wilkerson*, 461 F. App'x at 21 (quoting *Curley v. Village of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001)). "An officer may be liable for failure to intervene under Section 1983 where (1) the officer had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated; and (3) the officer does not take reasonable steps to intervene." *Werkheiser v.*

*Cnty. of Broome*, 655 F. Supp. 3d 88, 108 (N.D.N.Y. 2023) (citation modified) (quoting *Gerasimou v. Cillis*, No. 15-CV-06982, 2022 WL 118748, at *5 (E.D.N.Y. Jan. 12, 2022)). "Whether an officer had sufficient time to intercede or was capable of preventing the harm being caused by another officer is an issue of fact for the jury unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise." *Anderson*, 17 F.3d at 557. Moreover, a "failure to intervene claim is contingent upon the disposition of the primary claims underlying the failure to intervene claim." *Matthews v. City of New York*, 889 F. Supp. 2d 418, 443-44 (E.D.N.Y. 2012).

Defendants, with respect to Defendant Edwards, have submitted uncontroverted evidence that he was not even present for the search of Plaintiff, including the alleged sexual assault. (56.1 Stmt. ¶ 38). Accordingly, Defendants' motion for summary judgment as to the sexual assault claim against Defendant Edwards is granted. *Accord Myers v. Stasiak*, No. 06-CV-00607, 2009 WL 10739625, at *18 (S.D.N.Y. Sept. 18, 2009) (granting summary judgment for failure-to-intervene claim where the defendants "were not even present to witness the alleged constitutional violation."). For this same reason, the Court also dismisses Plaintiff's Fourth Amendment claim as against Defendant Edwards pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

Defendants, with respect to Defendant Banks, argue that, although he was present for the alleged sexual assault, he did not have "a 'realistic opportunity to intervene and prevent the harm[.]'" (Defs. Br. at 23 (alteration in original) (quoting *Jean-Laurent v. Wilkinson*, 540 F. Supp. 2d 501, 512 (S.D.N.Y. 2008)). Plaintiff stated in his deposition that the alleged sexual assault "wasn't that long . . . ." (Pl. Dep. Tr. at 89:3-6). Further, according to Plaintiff, Defendant Thomas grabbed Plaintiff's privates while reaching under his clothes. (*Id.* at 88:3-23). Therefore, there is no evidence that Defendant Banks even knew that Defendant Thomas sexually assaulted Plaintiff. Based on the foregoing, the Court agrees with Defendants that Defendant Banks did not have a

realistic opportunity to intervene in the alleged sexual assault of Plaintiff. *See, e.g.*, *Thomas v. Jacobs*, No. 19-CV-06554, 2025 WL 662899, at *11 n.19 (S.D.N.Y. Feb. 28, 2025) ("Assuming [the defendant] digitally penetrated Plaintiff for a few seconds, there is no way anybody else had a reasonable opportunity to intervene."). Accordingly, Defendants' motion for summary judgment is granted as to Plaintiff's sexual assault claim against Defendant Banks.

The same cannot be said for Plaintiff's Fourth Amendment claim against Defendant Banks. According to Plaintiff, Defendant Thomas pushed him against the wall, choked him with his own sweatshirt, and then conducted a pat frisk of Plaintiff, which included reaching into Plaintiff's pants. (Pl. Dep. Tr. at 48:10-16). Defendants make no argument regarding this claim and, based on Plaintiff's deposition testimony, the search was sufficient in length such that Defendant Banks had a realistic opportunity to intervene. *See, e.g.*, *Harris v. City of Newburgh*, No. 16-CV-02731, 2017 WL 4334141, at *9 (S.D.N.Y. Sept. 27, 2017) ("[It] is implausible that these numerous actions occurred in such quick succession as to preclude an opportunity for intervention.").

Accordingly, Defendants' motion for summary judgment is granted as to Plaintiff's sexual abuse claim against Defendants Edwards and Banks. Plaintiff's Fourth Amendment claim is also dismissed as against Defendant Edwards pursuant to U.S.C. § 1915(e)(2)(B)(ii). Plaintiff's Fourth Amendment claim will, however, proceed against Defendant Banks.

## V. Qualified Immunity

Defendants also argue that they are entitled to qualified immunity as to Plaintiff's sexual abuse claim. (Def. Br. at 27-28). Having already dismissed this claim as against Defendants Edwards and Banks, the Court addresses only whether Defendant Thomas is entitled to qualified immunity for Plaintiff's sexual abuse claim.

The doctrine of qualified immunity protects officials from liability for civil damages when, "(a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." *Garcia v. Doe*, 779 F.3d 84, 92 (2d Cir. 2015) (quoting *Russo v. City of Bridgeport*, 479 F.3d 196, 211 (2d Cir. 2007)). "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Almighty Supreme Born Allah v. Milling*, 876 F.3d 48, 59 (2d Cir. 2017) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). The contours of a right are sufficiently clear if there is a case in which "'an officer acting under similar circumstances . . . was held to have violated' the Constitution." *Zorn v. Linton*, 146 S. Ct. 926, 930 (2026) (per curiam) (quoting *Escondido v. Emmons*, 586 U.S. 38, 43 (2019)). In other words, if an official "could have 'read' the relevant precedent beforehand and 'know[n]' that it proscribed their specific conduct," then they are not entitled to qualified immunity." *Id.* (quoting *City and County of San Francisco v. Sheehan*, 575 U.S. 600, 616 (2015)). If an official's belief that his or her action does not violate clearly established law is "objectively reasonable," he or she is shielded from liability by qualified immunity. *Cooper v. City of New Rochelle*, 925 F. Supp. 2d 588, 608 (S.D.N.Y. 2013).

Here, viewing the evidence in the light most favorable to Plaintiff, Defendant Thomas' actions did violate clearly established law, and it was not objectively reasonable for Defendant Thomas to believe that his actions did not violate such law. As other cases have held, there is no legitimate, penological purpose for grabbing and squeezing an inmate's privates, particularly under the circumstances here where there are issues of fact regarding Defendants' belief that Plaintiff possessed a weapon. *See, e.g.*, *Hayes v. Dahlke*, 976 F.3d 259, 275 (2d Cir. 2020) ("[T]he routine

nature of . . . pat frisks alone does not shield an officer from liability, and the conduct described by [the plaintiff], if believed, could certainly support an inference that [the defendant] engaged in conduct beyond what was required for a pat search in order to 'gratify [his] sexual desire' or 'humiliate' [the plaintiff]."); *DeJesus*, 531 F. Supp. 3d at 665-66 (granting summary judgment to plaintiff on sexual abuse claim where the defendant "reach[ed] inside Plaintiff's pants and painfully grabb[ed] his genitalia . . . ."); *Lewis v. Fischer*, No. 08-CV-03027, 2009 WL 689803, at *5 (E.D.N.Y. Mar. 12, 2009) (denying motion to dismiss sexual abuse claim where the defendant allegedly "reached inside [the plaintiff's] pants and fondled his penis and squeezed his testicles causing him severe pain and humiliation in the presence of others.").

Accordingly, Defendants' motion for summary judgment as to Plaintiff's sexual abuse claim based on the affirmative defense of qualified immunity is denied.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED IN PART and DENIED IN PART.

Plaintiff's Eighth Amendment sexual abuse claim is dismissed as against Defendants Edwards and Banks. Plaintiff's Fourth Amendment claim is dismissed as against Defendant Edwards. This case will proceed to trial on the following claims: (1) unlawful search pursuant to the Fourth Amendment against Defendants Thomas and Banks; (2) sexual abuse pursuant to the Eighth Amendment against Defendant Thomas; and (3) excessive force pursuant to the Eighth Amendment against all Defendants. The parties shall file those materials required by Rules 6(A) and 6(B) of this Court's Individual Practices on or before August 31, 2026.

Furthermore, Plaintiff is directed to notify the Court in writing of his current address within fourteen days of the date of this Opinion & Order. Plaintiff is reminded that it is his obligation to

promptly submit a written notification to the Court if his address changes, and the Court may dismiss the action if Plaintiff fails to do so.

The Clerk of Court is respectfully requested to terminate the motion sequence pending at Doc. 97 and mail a copy of this Opinion and Order to Plaintiff at his address listed on the docket, and to the following address: 25 Operations Drive, Valhalla, NY 10595.

**SO ORDERED.**

Dated: White Plains, New York
July 9, 2026

HON. PHILIP M. HALPERN
United States District Judge